UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DUANE KAUFMANN,

    Plaintiff,

  v.                                        Case No. 21-CV-475

SCHOOL DISTRICT OF GREENFIELD,
MARK S. KAPOCIUS, SCOTT MILLER,
and GAGE JOHNSON,

    Defendants.

---

## DECISION AND ORDER ON DEFENDANTS'
## MOTION FOR SUMMARY JUDGMENT

---

Duane Kaufmann worked as a custodian at the School District of Greenfield ("the District") from December 9, 2019 until his termination on March 15, 2021. He now sues the District, Gage Johnson (his supervisor), Scott Miller (Director of Buildings and Grounds), and Mark Kapocius (Director of Human Resources and the District's General Counsel), for alleged violations of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601, *et seq*. The defendants move for summary judgment in their favor as to Kaufmann's FMLA claims. For the reasons stated below, defendants' motion for summary judgment is granted and the case is dismissed.

## FACTS

Kaufmann was hired by the District as a full-time Custodian I on December 9, 2019. (Defs.' Proposed Findings of Fact ("DPFOF") ¶ 6, Docket # 19 and Pl.'s Response to DPFOF ("Pl.'s Resp.") ¶ 6, Docket # 22.) Johnson was employed by the District as the first shift supervisor and was Kaufmann's direct supervisor. (*Id.* ¶ 7.) Johnson reported to Miller.

(*Id.* ¶ 8.) Throughout his employment with the District, Kaufmann was assigned to the high school. (*Id.* ¶ 11.) Kaufmann's assigned area for cleaning was primarily the administrative offices and some classrooms, hallways, and restrooms. (*Id.* ¶ 12.) In the Fall of 2020, after students returned to in-person classes following the school's closure due to the COVID-19 pandemic, Kaufmann worked full-time, second shift, Monday through Friday. (*Id.* ¶ 16.)

In November 2020, Kaufmann received an email from Johnson, discussing concerns Johnson had with how Kaufmann was performing his job duties, such as cleaning scrubbers and buffing floors. (*Id.* ¶ 55.) Sometime in December 2020, Kapocius first received feedback from Miller and Johnson regarding Kaufmann's job performance. (*Id.* ¶ 24.) Kapocius was informed that Kaufmann was frequently absent. (*Id.* ¶ 25.) Miller and Johnson told Kapocius they were concerned about Kaufmann's frequent absences and how it affected operations; Kaufmann worked second shift so if he was absent it created challenges for the District to complete its essential duties. (*Id.* ¶ 26.) Between July 1, 2020 and December 2020, Kaufmann had used 10 days of vacation and 6 days of sick leave (3 days for sickness and 3 days for personal business). (*Id.* ¶ 29.) Kaufmann was also off work on January 14 and 15, 2021 due to symptoms be believed might have been COVID-related and for COVID testing. (*Id.* ¶ 48.) After testing negative for COVID, Kaufmann returned to work on January 18, 2021. (*Id.* ¶ 51.)

Around this same time, Miller noticed a pattern of Kaufmann requesting Fridays off. (*Id.* ¶ 19.) Kaufmann and Miller met on January 18, 2021, and Miller presented Kaufmann with a letter signed by Kapocius dated the same day which read as follows:

> Since your hire date of December 15, 2019, you have been absent from work for a total of 9.0 days (72 hours) with additional absence requests pending. This far exceeds the number of days absent for a full-time custodial employee.

> Attendance is an essential function of the job. Your absences result in substantial disruption to the operations and safety of the buildings of the District. Continued absences will result in termination of your employment with the District; the position you hold will be filled by another person.
>
> If you believe that consistent and regular attendance will continue to be a challenge, please talk to Director Scott Miller about other opportunities in the District that may work better for your schedule.

(*Id.* ¶ 31.) During this meeting, Kaufmann informed Miller that he was taking Fridays off to care for his mother with medical issues. (*Id.* ¶ 20.) Miller offered to change Kaufmann's schedule, proposing a Monday through Thursday schedule, and asked Kaufmann if that change would be beneficial. (*Id.*) Kaufmann thought about the proposed schedule change during the January 18, 2021 meeting and agreed that the new schedule would be beneficial to him. (*Id.* ¶ 21.) Thus, shortly after January 18, 2021, Kaufmann changed to a ten-hour shift, Monday through Thursday, from 2:30 p.m. to 1:00 a.m. (*Id.* ¶ 17.) He worked this shift through the end of his employment with the District. (*Id.* ¶ 22.)

On March 8, 2021, Kaufmann verbally told Debbie Ehemann, the District's Human Resources Assistant (*id.* ¶ 90), that he needed some time off for hernia surgery and would probably follow-up, asking if Ehemann could get him the forms (*id.* ¶ 111). Ehemann emailed him the forms the same day. (*Id.*) On March 8, Kaufmann believes he told Miller that he had gone to his primary physician, who had referred him to a surgeon, who had recommended umbilical hernia repair surgery and that he would need to go forward with the surgery, which would require approximately six weeks' recovery time. (*Id.* ¶ 112.) Kaufmann recalls that Miller told Kaufmann that he should have the surgery and that he (Miller) did not want anything to happen to Kaufmann, especially when he was working independently at night. (*Id.* ¶ 113.) Kaufmann also spoke with Johnson on March 8, 2021,

3

during which he relayed, in substance, the same information he had relayed to Miller. (*Id.* ¶ 114.)

Kaufmann kept a work cell phone and personal cell phone on his person while he was working to respond to calls. (*Id.* ¶ 61.) On March 8, 2021, Kaufmann received a call from Bryan Stankovsky, the Grounds Supervisor, seeking Kaufmann's assistance with an alarm that was triggered in the administration building. (*Id.* ¶ 62.) Kaufmann asserts that he missed the call from Stankovsky because he was vacuuming in the auditorium on the opposite end of the grounds. (*Id.* ¶ 65.) The next day, Johnson questioned Kaufmann about what happened with the security alarm in the administration building the prior night, and asked Kaufmann if he noticed that Stankovsky was trying to call him. (*Id.* ¶ 63.) Kaufmann acknowledged he missed Stankovsky's call. (*Id.* ¶ 64.)

Kaufmann was also responsible for cleaning Johnson's office. (*Id.* ¶ 67.) On March 10, 2021, the top piece of paper on Johnson's desk appeared to have cleaning assignments for new employees and had the name "Jesenia" on it. (*Id.* ¶ 68.) Kaufmann thought Jesenia was one of the employees questioning their work assignments on the evening of March 10, 2021. (*Id.* ¶ 69.) Kaufmann emailed Johnson at 10:24 p.m. on March 10, 2021, asking Johnson about cleaning assignments for "James" and "Jesenia," stating they had mentioned to him they were not assigned to clean a couple of the classrooms and restrooms. (*Id.* ¶ 70.) Johnson responded to Kaufmann by email on March 11, 2021, at 12:10 p.m., asking Kaufmann where he got the name "Jesenia." (*Id.* ¶ 71.) Kaufmann responded to Johnson by email on March 11, 2021 at 12:16 p.m., stating "Top paper on your desk, thought it was short for Jessie; thought I could figure it out." (*Id.* ¶ 72.) Johnson testified that he took offense to Kaufmann looking at paperwork about other staff members that was present on

4

his desk. (Declaration of Lori M. Lubinsky ("Lubinsky Decl.") ¶ 5, Ex. D, Deposition of Gage Johnson at 34, Docket # 18-4.)

In his March 11, 2021, 12:17 p.m. email, Johnson also asked if Kaufmann was scrubbing the hallways at night, noting that Heritage hallway did not look scrubbed. (DPFOF ¶ 76 and Pl.'s Resp. ¶ 76.) Kaufmann responded at 1:39 p.m., stating that while he usually scrubs hallways, he did not because the new custodians were scrubbing hallways and did them all in the whole building. (*Id.* ¶ 78.)

Kaufmann returned FMLA paperwork to Kapocius and Ehemann on March 12, 2021. (*Id.* ¶ 115.)

Miller prepared an Employee Warning Notice Verbal-Written-Notice-Termination ("Warning Letter"), dated March 15, 2021, with respect to Kaufmann. (*Id.* ¶ 80.) Kapocius reviewed the Warning Letter prepared by Miller prior to it being finalized and believed nothing in it was inaccurate. (*Id.* ¶ 82.) On the Warning Letter, Miller marked the box for Absenteeism, referring to the January 18, 2021 letter from Kapocius. (*Id.* ¶ 83.) Miller also listed previous warnings, including the previous verbal warning and Kapocius' January 18, 2021 letter. (*Id.* ¶ 84.) On the Warning Letter, Miller marked Violation of Safety Rules and Violation of District Policies, referring to (1) Kaufmann not being available and answering his phone to respond when the police were at the building for an alarm; and (2) Kaufmann's review of confidential records on Johnson's desk. (*Id.* ¶ 85.)

Miller met with Kaufmann on March 15 at 2:30 p.m. (*Id.* ¶ 90.) Miller started the meeting by reading from the Warning Letter he had prepared before the meeting. (*Id.* ¶ 91.) During the meeting, Kaufmann expressed his strong disagreement with the statement in the Warning Letter that he had gone through personnel files. (*Id.* ¶ 92.) Kaufmann strongly

5

disagreed with the statement in the Warning Letter that he had fabricated the scrubbing of the hallways by the newly hired custodians. (*Id.* ¶ 94.) Miller asked Kaufmann about his approved day off for a future absence on April 8, 2021, asking Kaufmann if he was using paid personal time as vacation time and asking why he needed the day off. (*Id.* ¶ 96.) Kaufmann had previously sent an email to Johnson on March 10, 2021, which was forwarded to Miller by Johnson on March 12, 2021, stating that Kaufmann needed off work on April 8, 2021, for personal business but he did not have any remaining vacation time to use. (*Id.* ¶ 97.) Kaufmann admits he got slightly defensive during the meeting when he answered questions about the time off request for April 8, 2021, stating it was clearly for personal business which meant it was his business. (*Id.* ¶ 98.) Johnson was not working on March 15, 2021 and was not present at the meeting between Kaufmann and Miller. (*Id.* ¶ 103.) Kaufmann's employment with the District was terminated on March 15, 2021.

## SUMMARY JUDGMENT STANDARD

The court will grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. The mere existence of some factual dispute does not defeat a summary judgment motion. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmovant. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment, a party cannot rely on his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Kaufmann asserts that defendants terminated his employment with the District for exercising his rights under the FMLA, specifically, by taking leave prior to January 18, 2021 and by requesting leave in March 2021 for his upcoming hernia surgery. (Pl.'s Br. in Opp. at 4, Docket # 20.) Kaufmann further argues that defendants interfered with his rights under the FMLA by terminating him to prevent him from taking leave for his upcoming hernia surgery. (*Id.* at 6.) I will address each claim in turn.

    1.    *FMLA Retaliation*

Again, Kaufmann alleges that defendants retaliated against him for exercising his rights under the FMLA. The FMLA makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Retaliation claims under the FMLA require that: "(1) the employee engaged in statutorily protected activity; (2) the employer

7

subjected her to an adverse action; and (3) the protected activity caused the adverse action." *Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018).

To defeat summary judgment on his retaliation claim, Kaufmann needs to submit evidence from which a reasonable juror could conclude that defendants retaliated against him for taking FMLA leave. *See Ortiz v. Werner Enter. Inc.*, 834 F.3d 760, 764 (7th Cir. 2016). The evidence "must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Id.* While *Ortiz* disposes of the distinction between "direct" and "indirect" evidence, it does not affect the *McDonnell Douglas* burden shifting framework. *Id.* at 766; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thus, "to the extent [plaintiff] wants to take advantage of it, she retains the initial burden of establishing a *prima facie* case of discrimination." *Mourning v. Ternes Packaging, Indiana, Inc.*, 868 F.3d 568, 570–71 (7th Cir. 2017).

As an initial matter, the defendants do not contest, for purposes of summary judgment, that Kaufmann engaged in a statutorily protected activity. (Defs.' Br. at 13, Docket # 17.) The parties appear to misunderstand each other, however, as to Kaufmann's alleged adverse employment action. Kaufmann argues that he was terminated for taking FMLA leave, and that the defendants do not challenge the first two elements of his FMLA retaliation claim, making "the only issue before the court [ ] whether genuine issues of material fact remain as to whether Kaufmann's protected activity caused his termination." (Pl.'s Br. in Opp. at 3.) The defendants, however, do not in fact concede the second element of Kaufmann's retaliation claim. Rather, defendants argue that Kaufmann's receipt of the

8

January 18 letter is not an adverse employment action because it did not materially alter the terms and conditions of employment. (Defs.' Br. at 13.)

Despite the parties' misunderstanding of each other's positions, it is clear that the "adverse employment action" is the termination, not receipt of the January 18 letter. Firing an employee for taking protected leave is undoubtedly an adverse employment action *see Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 819 (7th Cir. 2015), whereas "negative evaluation[s], written warnings, and placement on 'proof status' are putatively disciplinary measures" that do not raise to the level of an adverse employment action if they do not result in tangible job consequences, *see Whittaker v. N. Illinois Univ.*, 424 F.3d 640, 648 (7th Cir. 2005). Thus, despite defendants' arguments to the contrary, in actuality, the parties do not dispute that Kaufmann can establish the first two elements of his FMLA retaliation claim.

As such, Kaufmann is correct that the issue remaining then is whether defendants terminated Kaufmann's employment in retaliation for taking FMLA leave. Again, Kaufmann was hired by the District on December 15, 2019. As such, Kaufmann did not become an "eligible employee" under the FMLA until he was employed with the District for at least twelve months. 29 U.S.C. § 2611(2)(A)(i). Kaufmann acknowledges this, testifying that he did not take any FMLA leave during 2019 and 2020 as he "would not have been eligible until December of 2020." (Lubinsky Decl. ¶ 2, Ex. A, Deposition of Duane Kaufmann ("Kaufmann Dep.") at 38–39, Ex. 7, Docket # 18-1.) Kaufmann alleges that his first FMLA protected absences were on January 14 and 15, 2021, when he missed work for suspected COVID-related symptoms. (Pl.'s Br. in Opp. at 3.) Kaufmann argues that immediately upon his return for this FMLA-qualifying leave, the District issued a

9

disciplinary warning stating that "[c]ontinued absences will result in termination of your employment with the District." (Kaufmann Dep., Ex. 4, Docket # 18-1 at 65.)

But the January 18, 2021 letter references nine absences since Kaufmann's start date of December 15, 2019 (*id.*) and Kaufmann does not dispute that those nine absences were as follows—unpaid leave for six days (September 3, 11, and 14 and October 7, 8, and 9, 2020) and personal leave for three days (July 17, August 14, and September 4, 2020) (DPFOF ¶¶ 35–36 and Pl.'s Resp. ¶¶ 35–36). In other words, none of the absences referred to were FMLA-protected absences as they occurred prior to his eligibility date. Kaufmann asserts, however, that one could reasonably infer that defendants were actually also disciplining Kaufmann because of the two days of FMLA leave in January 2021 because Kapocius testified that he reviewed the "big picture" of Kaufmann's attendance issues prior to issuing the warning letter (Pl.'s Resp. to DPFOF ¶ 34, citing Lubinsky Decl. ¶ 3, Ex. B, Deposition of Mark Kapocius ("Kapocius Dep.") at 55–57, Docket # 18-2), and because the letter states that "continued absences will result in termination" without specifying what type of absences would do so (Pl.'s Br. in Opp. at 4). Although on summary judgment I am to construe all facts and reasonable inferences in Kaufmann's favor, *see Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007), "[i]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion," *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In this case, Kaufmann offers nothing more than speculation and conjecture as to causation.

Kapocius testified that Kaufmann's attendance issue was only a "small factor" in the termination decision. (Kapocius Dep. at 98–99.) This testimony is supported by the termination letter itself, which lists five reasons for Kaufmann's termination:

10

- Failing to respond to the March 8, 2021 call regarding the alarm, resulting in police being called and his supervisor having to come in to address the police response;
- Looking at employee personnel paperwork on Johnson's desk on March 10, 2021;
- Failing to scrub the floors in his designated area on March 10, 2021;
- Leaving a scrubber in the dock area and failing to repair it; and
- using paid time off as vacation time.

(Kaufmann Dep., Ex. 7, Docket # 18-1 at 71–73.) Only one stated reason relates to attendance, and that was specifically Kaufmann's alleged practice of using paid time off as vacation time, which is not allowed by the District. (Kapocius Dep. at 94.)

Kaufmann further argues that on March 8, 2021, he communicated to Ehemann that he needed time off for hernia surgery and requested FMLA forms, and also immediately told Miller and Johnson about the expected surgery and need for six weeks of recovery time. (Plaintiff's Proposed Findings of Fact ("PPFOF") ¶¶ 28–30, Docket # 21.) Kaufmann testified that Miller reacted to the news by agreeing that Kaufmann should have the surgery, stating that he "didn't want anything to happen to [Kaufmann], especially when [he] was working independently at night." (Kaufmann Dep. at 98.) Kaufmann further testified that he and Miller then told Johnson about the meeting and Kaufmann "didn't have to say a whole lot more really," indicating that Johnson did not express disapproval of the request (*Id.*) Kaufmann returned his FMLA leave request form to Kapocius and Ehemann on March 12, 2021. (PPFOF ¶ 31.) Kaufmann argues, however, that on March 15, 2021, only

11

one business day after submitting his FMLA forms, Miller terminated his employment. (PPFOF ¶ 32.)

Suspicious timing is certainly one piece of evidence a fact finder can consider in determining causation; after all, "[t]he closer two events are, the more likely that the first caused the second." *Loudermilk v. Best Pallet Co.*, LLC, 636 F.3d 312, 315 (7th Cir. 2011). However, on a motion for summary judgment, when the *only* piece of evidence the plaintiff has in support of causation is suspicious timing, it is insufficient to establish a genuine issue of material fact. *See id.* ("Suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment."); *see also Cole v. Illinois*, 562 F.3d 812, 816 (7th Cir. 2009) (quoting *Andonissamy v. Hewlett–Packard Co.*, 547 F.3d 841, 851 (7th Cir. 2008)) ("'Suspicious timing alone rarely is sufficient to create a triable issue' and on a motion for summary judgment 'mere temporal proximity is not enough to establish a genuine issue of material fact.'").

Kaufmann argues that the District's stated reasons for terminating his employment based on performance "certainly could not have formed the sole basis, if any, for Kaufmann's termination," leaving the "more plausible explanation" that the District "had finally had enough of Kaufmann's FMLA absences and immediately fired him for it." (Pl.'s Br. in Opp. at 5.) Kaufmann's theory is speculative at best. Again, "reliance on speculation is not enough to get the case to a jury." *Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 864 (7th Cir. 2011). Kaufmann argues that he did not exceed his allotted absences and that even if Miller and Johnson believed Kaufmann was absent too frequently, all of his absences were approved by his supervisors. (DPFOF ¶¶ 25–27, 30.) He further argues that his alleged performance deficiencies were "insignificant," not warranting termination. (Pl.'s Br. at 5, 7–

12

9.) While Kaufmann may think that he was treated unfairly by the District and disagrees with its decision to terminate his employment, "courts do not sit as super personnel departments, second-guessing an employer's facially legitimate business decisions." *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 532 (7th Cir. 2003). Because Kaufmann fails to present evidence on which a reasonable jury could find that he was fired for taking FMLA leave, summary judgment is granted in favor of defendants and the FMLA retaliation claim is dismissed.

    2.    *FMLA Interference*

Kaufmann further argues that by terminating his employment, defendants deprived him of future FMLA benefits to which he was entitled. (Pl.'s Br. in Opp. at 6.) The FMLA also makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise rights under the FMLA. 29 U.S.C. § 2615(a)(1). To prevail on an FMLA interference claim, Kaufmann must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled. *Hickey v. Protective Life Corp.*, 988 F.3d 380, 387 (7th Cir. 2021).

The defendants do not contest the first four elements of Kaufmann's FMLA interference claim. (Defs.' Br. at 4.) Defendants again, however, mistakenly argue that Kaufmann focuses on two events for purposes of his interference claim: (1) his return to work on January 18, 2021 after a two-day absence for COVID-related symptoms and (2) his termination from employment on March 15, 2021. (*Id.*) As with the retaliation claim, defendants argue that the January 18, 2021 incident was not a denial of FMLA benefits

because Kaufmann was restored to the same position held at the time the leave began. (*Id.*) However, as Kaufmann clarifies, his "interference claim did not stem from his January FMLA leave; rather, by terminating him in March, SDG interfered with Kaufmann's right to continue taking FMLA leave for his upcoming hernia surgery." (Pl.'s Br. in Opp. at 6.) As such, I will only address Kaufmann's claim regarding the termination of his employment.

"Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights." *Simpson v. Off. of Chief Judge of Cir. Ct. of Will Cty.*, 559 F.3d 706, 712 (7th Cir. 2009). On summary judgment, the relevant question is whether a jury could find that the defendants did not reinstate Kaufmann to his position because he exercised his right to take FMLA leave. *See Goelzer v. Sheboygan Cty., Wis.*, 604 F.3d 987, 993 (7th Cir. 2010).

As with his FMLA retaliation claim, Kaufmann argues that the District's proffered reasons for terminating his employment were pretext for discrimination because of the timing of his termination and the insignificance of his asserted performance issues. (Pl.'s Br. in Opp. at 7–9.) But for the same reasons summary judgment is appropriate on Kaufmann's FMLA retaliation claim, summary judgment is granted on his FMLA interference claim. Kaufmann does not dispute that he was absent the days the District contends— even if he disagrees with its interpretation of the attendance policy. Nor does he dispute that he did the actions listed in the termination letter—even if he believes the actions were "insignificant." Rather, he speculates (based on his opinion that his performance issues were insignificant and the timing of his termination), that the only possible reason the District fired him was because of his FMLA requests. But again, speculation is insufficient to bring a claim to a

14

Case 2:21-cv-00475-NJ   Filed 05/19/22   Page 14 of 15   Document 27

jury. For these reasons, defendants' motion for summary judgment on Kaufmann's FMLA interference claim is granted and the claim is dismissed.

## CONCLUSION

Kaufmann alleges that the defendants violated his rights under the FMLA by terminating him for taking leave. The record evidence as presented is insufficient for a reasonable jury to find that the defendants violated Kaufmann's rights under the FMLA. For these reasons, the defendants' motion for summary judgment is granted and Kaufmann's complaint is dismissed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the defendants' motion for summary judgment (Docket # 16) is **GRANTED**. The case is dismissed. The clerk of court will enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 19th day of May, 2022.

BY THE COURT:

_____
NANCY JOSEPH
United States Magistrate Judge